AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
APR 08 2019
David J. Bradley, Clerk of Court

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. **G-19-059**
Google Drive information and contents associated with )
email account: hammerman0770@gmail.com that is )
stored at premises controlled by Google LLC )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252 and 2252A et seq; | Distribution, Receipt and Possession of Child Pornography |

The application is based on these facts:
see attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DeWayne Lewis, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 8, 2019

*Judge's signature*

City and state: Galveston, Texas

Andrew M. Edison, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH GOOGLE DRIVE AND EMAIL ACCOUNT: hammerman0770@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | Case No. **G-19-059** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, DeWayne Lewis, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Google, Inc., a company headquartered at 1600 Ampitheater Parkway, Mountainview, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose copies of the information to the government (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, a government-authorized person will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent (SA) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), assigned to the Homeland Security Investigations (HSI) office in Galveston, Texas. I have been so employed since June 2002. As part of my duties as an ICE agent, I investigate criminal violations related to child exploitation and child pornography, including violations pertaining to online extortion and/or stalking, adults attempting to meet with juveniles for sexual encounters and the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. I have received training in the area of child pornography and child exploitation, and I have had

the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256)[1] in all forms of media, including computer media. I have participated in the execution of numerous search warrants and covert operations involving child exploitation and the online solicitation of minors, many of which involved child exploitation and/or child pornography offenses. I am in routine contact with experts in the field of computers, computer forensics, and Internet investigations. I annually attend the Dallas Crimes Against Children Conference where I attain various investigative training. I am currently a member of the Houston Metro Internet Crimes Against Children Task Force. This task force includes prosecutors and members of multiple police agencies across the southeast/coastal Texas and Houston metro regions.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. §§ 2252(a)(4)(B) and 2252A(a)(5)(B), et seq., which make it a crime to possess child pornography, violations of Title 18 U.S.C. §§ 2252(a)(2) and 2252A(a)(2), et seq., which make it a crime to receive/distribute child pornography in interstate commerce by computer, and violations of 18 U.S.C. §§ 2252(a)(1) and 2252A(a)(1), et seq., which make it a crime to transport or ship child pornography in interstate commerce have been committed by the person using Google email address hammerman0770@gmail.com. There is also probable cause to search the information

---

[1] "Child Pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; . . . [or] (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." For conduct occurring after April 30, 2003, the definition also includes "(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct," 18 U.S.C. § 2256(8).

described in Attachment A for evidence, contraband, instrumentalities and/or fruits of these crimes, as described in Attachment B.

## GOOGLE DRIVE

5.  Google, Inc., hereafter, "Google," is a global internet business and consumer services company that offers a comprehensive network of properties and services including Gmail, Google Maps, Google Calendar, Google Hangouts, Google Keep, Google Play, YouTube, and many others.

6.  **Google Drive** is a free file storage (up to 15 gb) and synchronization service operated by Google. It allows users to increase their storage limits beyond their hardware at home and store files in the cloud, synchronize files across devices and share files. Users can store any type of files: photos, videos, PDF's (portable document files), etc. Users can also save email attachments directly to their Google Drive instead of manually manipulating it over to its new storage location. It is available on the internet and as a mobile application. A user registers with Google Drive by creating a Google account at www.google.com, clicking the "create an account" link and a step-by-step, or "click-by-click," method leads the user through the process. Files and folders stored in Google Drive can be shared privately with other, particular users through their Google account(s). Google Drive comes loaded, or pre-installed, as an application, or "app," on various smartphones. After a user has a Google account created, he can access his free storage space through his web browser, through his computer's file system and through his mobile device.

## PROBABLE CAUSE

7.  The Houston Metro Internet Crimes Against Children (ICAC) task force received information about suspicious activity from Google, Inc.'s cloud storage service division named Google Drive. Google reported to the National Center for Missing and Exploited Children (NCMEC) on December

31, 2018, that someone was uploading child pornography images into their cloud services infrastructure. Google viewed at least one file that was uploaded into their customer's Google Drive account, and provided that image to NCMEC. The NCMEC report was forwarded to the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigation (HSI) office in Galveston, Texas. HSI Special Agent DeWayne Lewis received and reviewed the report. The suspicious file was a color image that depicted a nude Caucasian minor exposing her vagina for the camera's view. The customer information associated with the account that Google supplied was, in part:

> Name: Kurt Rodehorst
> Mobile Phone: +14097718162
> Email Address: hammerman0770@gmail.com (Verified)

8. SA Lewis examined the suspicious image that was viewed and reported by Google, which met the federal definition of child pornography, and was from the hammerman0770@gmail.com Google Drive account activity. Its title and description are listed below, in part:

> <u>rl2-pics-tour-001.jpg</u> was a color photo that depicted a nude, pre-pubescent Caucasian female, approximately 6-8 years old, seated in a cushioned chair with her legs slightly parted to expose her vagina for the photographer's view.

9. SA Lewis researched the name Kurt Rodehorst and discovered that he was a local registered sex offender based on his most recent Texas conviction in 1995, for Indecency with a Child (5 year old victim), and his prior Louisiana conviction in 1991, for Indecent Behavior with a Juvenile (4 year old victim). On March 11, 2019, SA Lewis contacted the Galveston County Sheriff's Office sex offender compliance officer, Deputy Mitchell Stephenson. Deputy Stephenson confirmed that the phone number associated with the Google Drive account, 409-771-8162, was one associated with Rodehorst in their records management system. Deputy Mitchell also confirmed that Rodehorst's listed address was 410 Louisiana Avenue in Bacliff, Texas.

10. SA Lewis acquired a federal search warrant for the Rodehorst residence and executed it on March 28, 2019. Investigators made contact with Kurt Rodehorst at the scene and advised him there was a search warrant for the residence. SA Lewis asked to speak with Mr. Rodehorst about the warrant in the privacy of his unmarked, gray Ford Explorer while other investigators conducted their tasks. Mr. Rodehorst agreed and accompanied SA Lewis to his vehicle where Pearland Police Detective Cecil Arnold, a fellow-member of the Houston Metro ICAC, was waiting. Although he was not in custody, nor under arrest, Detective Arnold read the Miranda warning to Rodehorst, which he stated that he understood. Detective Arnold eventually asked Rodehorst what his email address was, and Mr. Rodehorst provided three, including hammerman0770@gmail.com. As the conversation progressed, Rodehorst stated that he needed to speak with an attorney and the interview was concluded.

## CHARACTERISTICS COMMON TO INDIVIDUALS WITH A SEXUAL INTERST IN CHILDREN

11. Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the sexual exploitation of children which includes the distribution, receipt, possession and collection of child pornography:

12. Individuals with a sexual interest in children receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

13. Individuals with a sexual interest in children collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals with a sexual interest in children oftentimes use these materials

for their own sexual arousal and gratification. Further, they may use these materials to lower, or "groom," the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

14. Individuals with a sexual interest in children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home, email account or in "virtual" storage, like in the iCloud, OneDrive or Dropbox.com. Individuals with a sexual interest in children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

15. "Child erotica," as used in this Affidavit, is defined as materials or items that are sexually arousing to certain individuals but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

16. Likewise, Individuals with a sexual interest in children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area or "virtual" storage. These collections are often maintained for several years and are kept close by, or remotely accessible, usually at, or via, the collector's residence, to enable the collector to view his collection, which is highly valued.

17. Individuals with a sexual interest in children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in sex with children or child pornography.

6

18. Individuals with a sexual interest in children prefer not to be without their child pornography, or prohibited from its' access, for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

19. Individuals with a sexual interest in children often have had, or continue to maintain, multiple email and social media accounts. It is common for such individuals to control multiple email addresses in their attempts to remain anonymous or thwart law enforcement's efforts to investigate their illicit activity. Some individuals will create an account to imply that they are of a different age or sex depending on what their online intentions are, or to pose as a person a potential victim already knows. Some individuals with a sexual interest in children will open multiple accounts, whether they be for email, social media or remote storage, with common denominators that can be identified by the host company that operates that medium. For example, a person with a sexual interest in children may create and maintain several different email accounts, but use the same email address as a "recovery" or "verifier" email account. Those individuals will use the same technique for new social media, email or virtual storage accounts when their original ones are compromised or shut down.

20. Individuals with a sexual interest in children often maintain contact information from their trusted sources or like-minded individuals. They also block, cancel or "unfriend," contacts that they perceive pose a threat to their illegal activity or have not maintained good standing. For example, another individual with a sexual interest in children, but preferred children of a different age range or ethnicity, might be blocked by the other. They may also block a person who threatens to contact a parent or the police about their online activity. Likewise, a victim of coercion, enticement and/or sexual exploitation may block a suspect who is attempting to further victimize them.

21. Based upon my training, knowledge and experience in investigations related to child exploitation and my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography and exploitation, I am aware that individuals who access paid

7

subscription or free sites offering images and/or videos depicting child pornography do so for the purpose of downloading or saving these images to their hard drive or other storage media so that the images and videos can be added to their collection. I know that individuals involved in the distribution of child pornography also continue to obtain images of child pornography found elsewhere on the Internet such as newsgroups and websites, and via paid subscriptions, as well as their own "trophy photos" of sexual conquests involving the exploitation of children.

22. Additionally, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes have a collection of child pornography and will ask children to take and send naked images of the themselves that would constitute child pornography as well as child erotica.

23. Furthermore, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes utilize social media such as Yahoo! Messenger, KIK Messenger and Craigslist and other online services to meet and communicate with minors. Individuals with a sexual interest in children know that social media allows for seemingly anonymous communication which they can then use to groom the minors and set up meetings in order to sexually exploit them.

## COMPUTERS AND CHILD PORNOGRAPHY

24. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology (including advances in smartphones, tablets and internet connectivity) have revolutionized the way in which children are exploited and how child pornography is produced, distributed, and utilized. Advancements in cellular telephone technology and mobile applications have furthered those revolutionary methods of exploitation.

25. Cellular telephones are routinely connected to computers to re-charge the batteries and

synchronize the mobile telephone with their matching computer programs, or "applications," on the computer. Cellular telephones are connected to the user's computer to transfer, save or back-up files or to download files, programs or "applications" via the internet, as one would do for music or ring tones. Users connect their cellular telephones to their computer to save, or back-up, their content or upload those files via the internet to a virtual storage medium like the iCloud, OneDrive or Dropbox, which allow users to access that content from any device with internet access, including their mobile devices (cellular phones or tablets) or another computer. Users can also download programs to their computers that mimic, or operate as if they are using, applications on their cellular telephone. Some of those examples include "iPadian," "Andy," and "BlueStacks." People with a sexual interest in children have embraced these technologies in their efforts to exploit children, conceal their true identities, misdirect investigators, hide evidence and communicate with others with the same interests.

26.     Technologies for portable cellular telephones, their batteries, internet connectivity and quick-charge devices have also greatly advanced. Today's vehicles often advertise built-in options for internet connectivity. In early 2013, General Motors announced it would partner with AT&T to outfit most of its 2014 models with high-speed data connectivity, with those same options available from Chrysler, Audi and Ford. These portable devices are commonly stored and used in vehicles and derive their power from being plugged in to cigarette lighters or auxiliary power outlets. Other portable navigation devices, like the Garmin or TomTom, provide turn-by-turn directions to previously unknown locations when the user inputs the desired address or destination and are commonly kept or stored in the user's vehicle. Many modern vehicles are equipped with satellite navigation from the factory. Modern computer technology in today's vehicles can navigate you to your destination, synchronize your cellular telephone to the on-board monitor for hands-free use and adjust radio and environmental controls by responding to voice-activated commands. The suspects' vehicles have increasingly become mobile storage places for evidence like the satellite navigation devices, laptops or storage media concealed from other household members. They also can hold other

evidence linked to their travel for contact with like-minded adults and sexually exploited minors; like gasoline, toll booth and parking receipts or traffic tickets.

27. Prior to the advent of computers and the internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of images. To distribute these images on any scale also required significant resources. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computer technology and the Internet, producers, collectors and distributors of child pornography can instantly and remotely upload images into virtual storage, like in the iCloud, OneDrive or Dropbox, allowing them to operate almost anonymously.

28. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers (including cellular telephones) and wi-fi technology has also revolutionized the way in which those who seek child pornography are able to obtain this information. Computers, and the modern "smartphone," allow simplified, often anonymous communication with persons far-removed from the solicitor. They can communicate with others with similar interests or where laws against sex with children are more lax or less enforced. They can also communicate directly with minor victims in a safe environment believing that their communications are anonymous. Computers also serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development and advancement of computers and internet technology has changed the methods used by those who seek to sexually exploit children and obtain access to child pornography in these ways.

29. Producers of child pornography can now produce both still and moving images directly from

a common video or digital camera, including cameras contained in the latest smartphones. A digital camera can be attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

30. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial ISPs, such as Comcast, AT&T and America Online ("AOL"), which allow subscribers to dial a local number or otherwise directly connect to a network, which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

31. The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in sex with children or child pornography; and (ii) websites that offer images of child pornography. Like-minded individuals with a sexual interest in children and victims of child exploitation, as well as witnesses to online exploitation, can be identified through a person's "contacts" lists, which may be termed in the form of "friends," "contacts," or "followers." Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute or receive child

pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet. Sometimes, the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" or "relics" of the websites and images accessed by the recipient.

32. The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single compact disk can store thousands of images and pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 500 gigabytes and larger are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

33. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is - in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they

are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

34. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require the Google Corporation to disclose copies of the records and other information to the government (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

35. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

36. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction," as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A). Specifically, the Court "a district court of the United States . . . that – has jurisdiction over the offense being investigated."

13

37. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

_____
DeWayne Lewis
Special Agent
DHS/ICE/Homeland Security Investigations

Subscribed and sworn to before me on April ___8___, 2019

_____
The Honorable Andrew M. Edison
UNITED STATES MAGISTRATE JUDGE

14

# **ATTACHMENT A**

## **Property to Be Searched**

This warrant applies to information associated with a Google LLC customer's Google Drive account connected with the email address: hammerman0770@gmail.com from the date of its creation through to the present that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Ampitheater Parkway, Mountainview, California 94043.

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be disclosed by the Google LLC**

To the extent that the information from the date of creation through to the present described herein is within the possession, custody, or control of Google LLC including any add/edit/delete logs, emails, records, files, other logs, or information that have been deleted but are still available to Google LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google LLC is required to disclose the following information to the government for each account or identifier listed:

a.  Any and all Google Drive content(s), to include;
    any add/edit/delete logs,
    emails to or from the customer,
    records,
    files,
    any other logs,
    or any other content(s), files, photographs, videos and/or information that is available to Google LLC, whether it has been deleted or not, that are associated with the Google LLC customer's account identified through the his email address: **hammerman0770@gmail.com**, and;

b.  All other old or new Google Drive accounts, with their contents and logs as described in I(a) above, utilized by the same customer;

c.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit card or bank account numbers);

d.  Log files;

 e. The types of service utilized;

 f. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

 g. All records pertaining to communications between Google LLC, and any person regarding the account, including contacts with support services and records of actions taken.

**II.** **Information to be seized by the government**

All information from the date of creation through to the present described above that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A, involving the customer's/user's account associated with his email address: **"hammerman0770@gmail.com,"** including, for each account or identifier listed, information pertaining to the following matters:

**a.** All images depicting children engaging in sexually explicit conduct as defined in 18 U.S.C. § 2256

**b.** All electronic communications regarding children engaging in sexually explicit conduct;

**c.** All communications with potential minors involving sexual topics or in an effort to seduce the minor.

**d.** Any evidence that would tend to identify the person using the account when any of the items listed in subparagraphs a-c were sent, read, copied or downloaded.

**e.** Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

**IV.** **Method of Delivery**

Google LLC shall disclose items seized pursuant to this search warrant by sending (notwithstanding Title 18, United States Code, Section 2252A, or similar statute or code) to the listed Special Agent. Google LLC shall disclose responsive data, if any, by delivering on any digital media storage device via the United States Postal Service or commercial interstate carrier (notwithstanding Title 18, United States Code, Section 2252A, or similar statute or code) c/o Special Agent DeWayne Lewis, Homeland Security Investigations, 601 Rosenberg Avenue, Suite 201, Galveston, Texas 77550.